# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DALE EASTERWOOD, STEPHANIE LAYNE-CAMERON, SHAMEKA PLATTE, ORLANDO RIVERA, SHANNON SMITH, EVANGELA BROOKS, MARIA RAMOS and IVORY WRIGHT,**

        **Plaintiffs,**

**v.**                                                             **Case No: 6:19-cv-700-WWB-LRH**

**SEDGWICK CLAIMS MANAGEMENT SERVICES INC.,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION FOR APPROVAL OF SETTLEMENT (Doc. No. 393)** |
| **FILED:** | May 17, 2021 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

### I. BACKGROUND.

On April 12, 2019, Plaintiffs Dale Easterwood, Stephanie Layne-Cameron, Shameka Platte, Orlando Rivera, and Shannon Smith, on behalf of themselves and those similarly situated, filed this putative collective action against Defendant Sedgwick Claims Management Services Inc., asserting

a single claim that Defendant failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Doc. No. 1. On June 2, 2020, Plaintiffs filed an amended complaint, adding Evangela Brooks, Ivory Wright, and Maria Ramos as named Plaintiffs. Doc. No. 123.

The parties jointly moved for conditional class certification. Doc. No. 120. The Court granted the request in part, conditionally certifying the following classes pursuant to 29 U.S.C. ¶ 216(b):

> **The STD Class**: All individuals who worked for Sedgwick in the roles of Disability Representative Senior (except residents of the state of Illinois whose duties also consisted of processing Americans with Disability Act accommodation claims), Absence Management Care Team Representative, or Customer Advocate Representative nationwide during the period from three years and 123 days prior to the date of the Court's Order granting certification to the date of that Order, who were classified as exempt from overtime, and who did not receive overtime compensation, and whose duties consisted of processing short term disability claims.
>
> **The ADA Class**: All individuals who worked for Sedgwick in the role of Disability Representative Senior nationwide (except residents of the state of Illinois) during the period from three years and 123 days prior to the date of the Court's Order granting certification to the date of that Order, who were classified as exempt from overtime, and who did not receive overtime compensation, and whose duties consisted of processing Americans with Disability Act accommodation claims.

Doc. No. 128, at 2. Plaintiffs Easterwood, Layne-Cameron, Platte, Rivera, Smith, Brooks, Ramos, and Wright were appointed as class representatives of the STD Class, and Plaintiff Brooks was appointed as class representative of the ADA Class. *Id.* Based on a review of the docket, two hundred total persons have consented to join as plaintiffs in this lawsuit.[1]

On March 30, 2021, prior to the close of discovery, the parties notified the Court that they had reached a settlement. Doc. No. 386. On May 17, 2021, the parties filed a Joint Motion for

---

[1] *See* Doc. Nos. 3–6, 8, 11, 18, 20–21, 27, 34–35, 38–41, 60, 65, 67, 70, 83, 91, 98, 107, 110, 119, 124, 132–59, 161–282, 284–307, 309, 312–13, 315, 317 (opt-ins); *see also* Doc Nos. 318–22 (withdrawals).

Approval of Settlement, in which they request that the Court approve their settlement in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). Doc. No. 393. With the motion, the parties have filed a fully executed copy of their Settlement Agreement and Release ("Agreement") (Doc. No. 393-1); a Notice of Settlement of Lawsuit to be sent to class members ("Notice of Settlement") (Doc. No. 393-2); a Distribution List, which lists the amount each Plaintiff will receive in settlement ("Distribution List") (Doc. No. 393-3); and a release to be signed by each Plaintiff ("Release Form") (Doc. No. 393-4).

The terms of the Agreement provide that $5,600,000.00 will be divided among the representative and opt-in Plaintiffs in accordance with the Distribution List (*see* Doc. No. 393-3), each representative Plaintiff will receive additional service payments of up to $2,500.00 per person (*see* Doc. No. 393-1, at 11), and that Plaintiffs' counsel will receive up to $2,400,000.00 in attorneys' fees and litigation expenses (Doc. No. 393-1, at 14).

The Agreement is contingent on Plaintiffs executing and returning the Release Form. *See* Doc. No. 393-1 ¶ 4.4; Doc. No. 393-4. It provides that counsel for Plaintiffs shall provide to Defendant's counsel personalized Release Forms for each Plaintiff within five (5) days after the Court's approval of the Agreement, and Defendant's counsel shall have five (5) days to approve the Release Forms, or to work through any edits with Plaintiffs' counsel. Doc. No. 393-1 ¶¶ 5.1–5.2. Within ten (10) days after Defendant's counsel receives the personalized Release Forms, and after the Release Forms have been approved, Plaintiffs' counsel shall send to each Plaintiff, via both U.S. mail and e-mail, a package containing the Notice of Settlement and the Release Form, along with a postage-paid, pre-addressed envelope to return the Release Form to Plaintiffs' counsel. *Id.* ¶ 5.3. In order to participate in and be bound by the Agreement, each Plaintiff must complete and return the Release Form to Plaintiffs' counsel within forty (40) days from the date the Release Form is sent

to each Plaintiff. *Id.* ¶ 5.6. If fifteen (15) or more representative or opt-in Plaintiffs fail to timely sign and return the Release Form, or if the representative and opt-in Plaintiffs who fail to timely sign and return the Release Form in combination represent more than 15% of the payment amount, Defendant shall have the right to declare the Agreement null and void. *Id.* ¶ 4.4. In the event that Defendant nullifies the Agreement due to participation, the parties will return to their same positions in the lawsuit without prejudice to either party. *Id.*

In the joint motion for settlement approval, the parties ask that the Court approve the Agreement and dismiss this action without prejudice, retaining jurisdiction to enter a final order of dismissal with prejudice upon completion of the notice and release provisions of the Agreement. Doc. No. 393, at 14. The joint motion was referred to the undersigned for issuance of a Report and Recommendation, and the matter is ripe for review.

## II.   APPLICABLE LAW.

In *Lynn's Food Stores*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353. A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims. *Id.* at 1353–55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food Stores*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

When a settlement agreement includes an amount for attorneys' fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).[3] The parties may demonstrate the reasonableness of the attorneys' fees by either: (1) demonstrating the reasonableness of the proposed attorneys' fees using the lodestar method; or (2) representing that the parties agreed to plaintiff's attorneys' fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

**III.  ANALYSIS.**

  *A.  Impact of Conditional Certification*

The parties request that the Court approve their settlement agreement, but make no requests concerning final certification. However, the undersigned finds that final certification or decertification is not necessary for approval of the settlement. It appears that the majority of approvals in other FLSA collective action settlements in the Middle District of Florida did not require such action. *See Huff v. Bobcat N. Am., LLC*, No. 6:19-cv-861-Orl-37DCI, 2021 WL

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

268356 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021); *Ortiz v. Metters Indus., Inc.*, 6:17-cv-1879-Orl-PGB-DCI, Doc. No. 131, *report and recommendation adopted at* Doc. No. 133 (M.D. Fla. August 16, 2019) (citing *Harris v. Performance Transportation LLC*, No. 8:14-cv-02913-SDM-AAS (M.D. Fla. Oct. 27, 2016)). And the undersigned has not located any binding authority that requires different treatment of FLSA collective actions versus FLSA individual actions with respect to approval of settlements. *Cf. Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1–2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

The undersigned agrees with this persuasive authority, particularly given that Defendant has never moved for decertification and the case settled prior to discovery closing, to the parties filing any dispositive motions, and to the case being ready for trial. Accordingly, the undersigned will respectfully recommend that the request for approval of settlement proceed while the case is in the conditional certification stage.

    B. *Whether Plaintiffs Have Compromised Their Claims.*

The parties represent that there exists a bona fide dispute as to Plaintiffs' FLSA claims. Doc. No. 393, at 7. Defendant contends, and Plaintiffs deny, that Plaintiffs were subject to the administrative exemption under the FLSA. *Id.* During the relevant periods of their employment, Plaintiffs were not required to track the number of hours they worked, nor did Defendant track their hours with a timekeeping system; therefore, Plaintiffs provided estimates of the hours worked, relying on memory and inferences from the data produced by Defendant. *Id.* at 7–8. Defendant disputed those estimates and contended that the estimates contained discrepancies. *Id.* at 8. Thus, the parties represent that there was "a clear dispute" and a "large divide" in the parties' positions

regarding the number of hours worked by Plaintiffs and whether they were exempt under the FLSA. *Id.* The parties acknowledge that Plaintiffs ultimately compromised their claims after extensive settlement negotiations. *Id.* at 8–9.

Because Plaintiffs will receive less under the Agreement than the amount they claimed they were owed under the FLSA, Plaintiffs have compromised their claims within the meaning of *Lynn's Food*. *See Bonetti*, 715 F. Supp. 2d at 1226 ("Broadly construed, a compromise would entail any settlement where the plaintiff receives less than his initial demand.").

    C. *Reasonableness of the Settlement Amount.*

Because Plaintiffs have compromised their claims, the Court must determine whether the settlement amount they agreed to accept is reasonable. Here, each Plaintiff will recover anywhere from $110.10 to $119,540.18. Doc. No. 393-3. The parties point to the Distribution List and represent that they considered the following factors in determining the amount of each Plaintiff's distribution:

> (i) the number of weeks a Plaintiff worked in a particular job during the relevant time period;
>
> (ii) the number of weeks worked by a Plaintiff during the class time period;
>
> (iii) when a Plaintiff opted into the lawsuit;
>
> (iv) the particular Plaintiff's rate of pay;
>
> (v) the type of position held by each Plaintiff;
>
> (vi) the estimate of hours a Plaintiff worked in any given work week based upon Plaintiffs' estimate of hours as well as Defendant's records; and, other factors related to the legal risks associated with continued litigation and trial.

Doc. No. 393, at 9. The parties also considered the risks of continuing to litigate the case. *Id.* at 9–10. Plaintiffs and Defendant continue to strongly disagree over the merits of Plaintiffs' claims. *Id.* at 10. Both parties investigated Plaintiffs' claims over the past two years, exchanged

voluminous amounts of information during discovery, and have made "an educated and informed analysis and conclusion" regarding the settlement. *Id.* at 10–11.

Because these representations adequately explain the reasons for the compromise of Plaintiffs' FLSA unpaid wage claims, I recommend that the Court find the amount of the compromise reasonable. *See Bonetti*, 715 F. Supp. 2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

D. *Service Awards.*

In addition to the class settlement amount, pursuant to the Agreement, Defendant has also agreed to pay $2,500.00 service awards to the representative plaintiffs, for a total of $20,000.00. Doc. No. 393-1 ¶ 1.15. The service awards will be paid in recognition of the representative Plaintiffs' efforts in representing the interests of all Plaintiffs and because of the risks associated. *Id.* In the joint motion, the parties also state that "[a]ll Representative Plaintiffs were actively involved in this case at all times," were "involved in voluminous discovery, including review of documents and involvement in production of documents and discovery disputes," and "also participated in a lengthy mediation and were involved in the settlement negotiations between counsel." Doc. No. 393, at 12. It also does not appear that these service awards impacted or diminished the amounts awarded to any other Plaintiff.

"There is no provision for a 'representative plaintiff' under the FLSA." *Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-cv-344-Orl-28KRS, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011), *report and recommendation adopted by*, 2011 WL 5873968 (M.D. Fla. Nov. 23, 2011). Thus, "generally no incentive payment to a named plaintiff in an FLSA collective action is warranted." *Id.* "Courts have, however, awarded incentive fees to named plaintiffs who establish

- 8 -

that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation." *Id.* at *5.

Based on the parties' representations, particularly that each representative Plaintiff was actively involved in the case at all times, engaged in voluminous discovery and document production, and participated in lengthy mediation and settlement negotiations with counsel, and given that Defendant did not oppose the appointment of these representative Plaintiffs in this case, I respectfully recommend that the Court find payment of the service awards both reasonable and permissible. *See, e.g.*, *id.* (approving service award in FLSA case); *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-01182-T-CEH-EAJ, 2015 WL 12843848, at *4 (M.D. Fla. Dec. 7, 2015) (approving service award in FLSA settlement as "reasonable in light of the efforts expended in furthering the interests of the Class, and the risks incurred as a result of their participation herein").

E.  *Attorneys' Fees and Costs.*

Because Plaintiffs have compromised their FLSA overtime claims, the Court must also consider whether the payment to their attorneys is reasonable to ensure that the attorneys' fees and costs to be paid did not improperly influence the amount Plaintiffs agreed to accept in settlement. *See Silva*, 307 F. App'x at 351.  Pursuant to the Agreement, Plaintiffs' counsel will receive no more than $2,400,000.00 in attorneys' fees and litigation expenses.  Doc. No. 393-1, at 14 ¶ 7.1.  In the joint motion, the parties discuss *Bonetti* in detail and state as follows:

> In the instant case, the attorneys' fees were agreed upon separately and without regard to the amount paid to the plaintiffs. In addition, the recovery of plaintiffs was not compromised in any way by the amount paid in attorneys' fees and costs.  Also, given the complexity of the case and the tenacity of the defense, counsel for the parties agree that the amount of attorneys' fees and costs recovered by Plaintiffs' counsel for this litigation spanning over two years is just and reasonable.
>
> Accordingly, because the settlement is reasonable on its face and Plaintiffs' recovery was not adversely affected by the amount of the fees paid to their attorney, the Court should approve the settlement.

Doc. No. 393, at 13–14.

Based on these representations, there is no reason to believe that the amount Plaintiffs agreed to accept was adversely affected by the amount of fees to be paid to their counsel. *See Bonetti*, 715 F. Supp. 2d at 1228 (finding that when attorney's fee issue is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement"). Therefore, I recommend that the Court find that the amount of attorneys' fees to be paid under the Agreement does not taint the amount Plaintiffs agreed to accept to settle their FLSA claims.

*F. The Release.*

The Court must next consider whether Plaintiffs' release of claims in the Agreement renders it unfair. *See generally Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) ("Pervasive, overly broad releases have no place in settlements of most FLSA claims."). Any of the Plaintiffs who wish to participate in the Agreement must execute the Release Form, which provides:

> In consideration for the money paid to the undersigned Plaintiff pursuant to the Settlement in the above-styled case, the undersigned Plaintiff waives and releases any claim, cause of action, or demand under the Fair Labor Standards Act, including liquidated damages, interest, attorneys' fees, or litigation expenses, for the period of time from April 12, 2016 through March 30, 2021 against Defendant and any of its current and former parents, subsidiaries, affiliates, and, with respect to each of them, their predecessors, successors, assigns, executors, administrators, and insurers, and, with respect to each such entity, all of its past, present and future directors, officers, owners, shareholders, members, managers, employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, owners, shareholders, members, managers, employees, agents, insurers and attorneys, except for any claims undersigned Plaintiff asserted as a Representative Plaintiff or Opt-In Plaintiff in another pending case as of May 12, 2021.

*See* Doc. No. 393-4, at 1. The release is limited to the claims raised in Plaintiffs' amended complaint and those at issue in this lawsuit. Therefore, "the Release is sufficiently narrow because

. . . it 'does not require Plaintiff[s] to release all possible claims, but only those asserted in the [C]omplaint.' Hence the Release does not render the Settlement unfair." *See Dumas v. 1 Able Realty, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 1791535, at *1 (M.D. Fla. Apr. 16, 2018) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240 (M.D. Fla. 2010)).[4] There also do not appear to be any other provisions in the settlement agreement, such as confidentiality or non-disparagement provisions, that would typically be found to undermine the fairness of the settlement. Accordingly, I recommend that the Court find that the terms of the parties' settlement do not affect the reasonableness of the Agreement.[5]

G. *Retention of Jurisdiction.*

The parties request that the Court dismiss the case without prejudice and retain jurisdiction "for the time period during which the Notice of Settlement Forms are sent, Release Forms are received, and the Settlement payment is made, a period of time the Parties estimate will not exceed one hundred forty (140) days." Doc. No. 393, at 4. When the terms of the Agreement are met, the parties agree to immediately notify the Court by filing a joint notice of dismissal with prejudice. *Id.*

---

[4] Some Judges in this District have found that "a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party." *Arguelles v. Noor Baig, Inc.*, No. 6:16-cv-2024-Orl-37TBS, Doc. No. 19 (M.D. Fla. Feb. 24, 2017). However, where the release is limited to the wage claims asserted in the complaint, Judges have allowed extension of such a release to non-parties to the agreement. *See, e.g.*, *Marte v. Gizmo Orlando, Inc.*, No. 6:18-cv-596-Orl-37KRS, 2018 WL 3084007, at *1 (M.D. Fla. June 22, 2018); *Dumas*, 2018 WL 1791535, at *1; *Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5847123, at *2 (M.D. Fla. Oct. 6, 2016). Accordingly, I recommend that the Court find that the release in this case, which extends to non-parties but is limited to the FLSA claims asserted in the operative pleadings, does not undermine the fairness of the settlement.

[5] On May 18, 2021, the undersigned ordered the parties to file within three (3) days a notice stating whether or not the parties had entered into any other agreement (oral or written) that had not yet been disclosed to the Court, and that was related in any way to the present case and contained any of the following provisions: (1) a release extending beyond the FLSA claims in this case; (2) a confidentiality provision; or (3) a non-disparagement provision. Doc. No. 394. The parties filed their Joint Notice the following day, in which they represented to the Court that no such agreements exist. Doc. No. 395.

Generally, Courts in this District decline to retain jurisdiction to enforce the terms of an FLSA Agreement. *See, e.g.*, *Schisler v. Sam's West, Inc.*, No. 6:15-cv-517-Orl-22KRS, 2016 WL 2866216, at *3 (M.D. Fla. Apr. 29, 2016), *report and recommendation adopted by* 2016 WL 2854273 (M.D. Fla. May 16, 2016). Here, however, I recommend that the Court retain jurisdiction to enforce the Agreement. The Agreement may be voided if fifteen (15) or more representative or opt-in Plaintiffs fail to timely sign and return the Release Form, or if the representative and opt-in Plaintiffs who fail to timely sign and return the Release Form in combination represent more than 15% of the payment amount. Doc. No. 393-1 ¶ 4.4. In the event that Defendant nullifies the Agreement due to participation, the parties will return to their same positions in the lawsuit without prejudice to either party. *Id.* Accordingly, it is possible that the Agreement will be voided and the case would need to be resolved on the merits. Therefore, I recommend that the Court retain jurisdiction to enforce the terms of the Agreement and, pursuant to Local Rule 3.09(b), dismiss the case without prejudice, subject to the right of any party, within a date set forth by the Court, to move the Court for entry of an order dismissing the case with prejudice, or to reopen the case for further proceedings. *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5847123, at *2 (M.D. Fla. Oct. 6, 2016) (adopting recommendation, retaining jurisdiction to enforce the settlement agreement, and dismissing case without prejudice in substantially similar collective action where settlement was contingent on plaintiffs executing and returning release forms).

## IV. CONCLUSION.

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the Joint Motion for Approval of Settlement (Doc. No. 393);

2. **APPROVE** the Settlement Agreement and Release (Doc. No. 393-1);

3. **DISMISS** the case without prejudice, subject to the right of any party, within a date set forth by the Court, to move the Court for entry of an order dismissing the case with prejudice, or to reopen the case for further proceedings; and

4. **RETAIN** jurisdiction to enforce the terms of the Agreement until such time as the parties file a joint notice of dismissal with prejudice.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection**.

Recommended in Orlando, Florida on June 1, 2021.

*[signature]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record